In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2294 & 99-2451

UNITED STATES OF AMERICA,

Respondent-Appellee,

v.

JAMES MARCELLO and ANTHONY ZIZZO,

Petitioners-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7737--Paul E. Plunkett, Judge.

Argued February 14, 2000--Decided May 15, 2000

Before BAUER, FLAUM, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  This case gives us the opportunity to clarify when the courthouse doors close on defendants who, under the Antiterrorism and Effective Death Penalty Act (AEDPA), have one year to file for relief under 28 U.S.C. sec. 2255. Before getting to that, however, we first comment on an issue regarding the certificate of appealability (CA) issued by the district court.

After being convicted of an organized crime RICO conspiracy, illegal gambling, and extortion charges, James Marcello and Anthony Zizzo were sentenced to 12 and 10-year prison terms. The district court denied their motions for a new trial; we affirmed their convictions, United States v. Zizzo, 120 F.3d 1338 (7th Cir. 1997); and the Supreme Court denied their petition for certiorari on December 1, 1997, Marcello v. United States, 522 U.S. 998, 118 S. Ct. 566 (1997).

Represented by private counsel, Marcello and Zizzo filed a consolidated petition/1 for postconviction relief under sec. 2255 on December 2, 1998. District Judge Plunkett dismissed the petition as untimely but, over the government's objection, granted a CA regarding "(1) what constitutes a 'final' judgment so as to start the one-year limitations period running; and (2) how

the limitations period is computed." Marcello and Zizzo appealed Judge Plunkett's dismissal of their petition. The government moved to dismiss, arguing that the judge should not have issued a CA in the first place. A lone circuit judge, acting as our motions judge, ordered that the government's challenge to the CA be considered together with the underlying statute of limitations question.

The AEDPA, enacted in 1996, narrowed and shortened the avenue of collateral relief available to convicted criminals. A state prisoner under 28 U.S.C. sec. 2254 or a federal prisoner under sec. 2255 may appeal the denial of a petition only if a CA is issued. 28 U.S.C. sec. 2253. A CA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. sec. 2253(c)(2).

The government attempts to knock this entire appeal out of the box by arguing that the denial of Marcello and Zizzo's sec. 2255 petition as untimely does not implicate their constitutional rights. Therefore, says the government, the district court never should have issued the CA and we lack jurisdiction. Marcello and Zizzo contend that once a district judge issues a CA-- rightly or wrongly--the appeals must move forward to the merits.

We have sent what might be construed as conflicting signals on whether the grant of a CA may be challenged. We have said that any challenge to a CA must be made right away because quibbling over the worthiness of the CA itself after the case has progressed to briefing on the merits will not serve the CA's purpose of conserving judicial and prosecutorial resources. See Romandine v. United States, 2000 WL 274025 (7th Cir. March 14, 2000); Dahler v. United States, 143 F.3d 1084, 1087 (7th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999); Young v. United States, 124 F.3d 794, 799 (7th Cir. 1997). Yet in at least one other case we dismissed an issue as inappropriately certified after full briefing on the merits was completed. See Buggs v. United States, 153 F.3d 439, 443 (7th Cir. 1998).

Unlike in Romandine, Dahler, and Young, the government in this case did not forfeit this issue. Instead, as we just noted, it objected to the CA in the district court and promptly moved us to dismiss the appeals before briefing on the merits took place. So what should be done?

In a situation like this--a bit of a procedural morass--we think the best approach is to say we

have discretion to decide the case by reviewing the validity of the CA or by going straight to the issues raised on the appeal. We can do this, of course, because even an unfounded CA gives us jurisdiction. Young, 124 F.3d at 799. However, we will exercise our discretion to review the issuance of a CA only in rare cases because, as we noted in Young, "[a]n obligation to determine whether a certificate should have been issued . . . increase[s] the complexity of appeals in collateral attacks and the judicial effort required to resolve them, the opposite of the legislative plan." Id. Here, because our motions judge allowed the challenge to the CA to pass without resolution, we go to the issue raised on this appeal.

Until a few years ago a prisoner could seek postconviction relief at almost any time. See, e.g., Lonchar v. Thomas, 517 U.S. 314 (1996) (prisoner who filed first petition 9 years after being sentenced was not too late). That changed dramatically with the AEDPA. The new law imposed a "1-year period of limitation" on petitions, triggered by one of four events, including "the date on which the judgment of conviction becomes final." 28 U.S.C. sec. 2255. The statute does not define "final" nor does it specify how the 1-year period should be computed.

For defendants who try unsuccessfully to take their case to the Supreme Court, their judgments of conviction become final on the date their petitions for certiorari are denied. See Rogers v. United States, 180 F.3d 349, 352-53 (1st Cir. 1999), cert. denied, 120 S. Ct. 948; Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999); United States v. Simmonds, 111 F.3d 737, 744 (10th Cir. 1997). See also Stringer v. Black, 503 U.S. 222, 226 (1992) (for purposes of Teague v. Lane, 489 U.S. 288 (1989), habeas petition's conviction became final when petition for certiorari was denied).

Although the Supreme Court denied Marcello and Zizzo's certiorari petition on December 1, 1997, that denial was not filed and docketed with this court until December 4, 1997. Marcello and Zizzo argue that the 1-year habeas clock did not start running until that later date and thus their December 2, 1998, petition arrived on time. The Supreme Court's denial of certiorari, however, is the last word on direct review. Although the Supreme Court notifies us of its decision, see Supreme Court Rule 16.3, the efficacy of the Supreme Court's order does not depend on when we receive it. The order denying certiorari is effective at the time of its entry by the Supreme Court. See Robert L. Stern et al., Supreme Court Practice 382-84, 628-29 (7th ed. 1993). No circuit

has held that the certiorari denial is not final until it is received by the circuit from which the case originated. See Adams v. United States, 173 F.3d 1339, 1343 (11th Cir. 1999). The petitioners point out that a district court's order is not final until set forth in a separate document and docketed. See Federal Rules of Civil Procedure 58 and 79(a); Federal Rule of Appellate Procedure 4(a) and (b); Williams v. Burlington N., Inc., 832 F.2d 100, 102 (7th Cir. 1987). That analogy is inapplicable to the situation here, which involves one court notifying another of its judgment. When the Supreme Court denies certiorari, a defendant's judgment of conviction is final.

The harder question is when the 1-year period to file a sec. 2255 motion ends. Once the Supreme Court denied the certiorari petition on December 1, 1997, did the defendants have until the following November 30, December 1, or December 2 to file their sec. 2255 motion?

The first way of computing the 1-year period, which we'll call the calendar-year method, would sound the buzzer on the petitioners at the close of business on November 30, 1998. The day the Supreme Court denies certiorari counts as the first day, which means the 365th and final day to file the sec. 2255 motion falls the following year on the date before the date that certiorari was denied. Support for this approach comes from Lindh v. Murphy, 96 F.3d 856, 866 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997), which gave already imprisoned individuals until April 23, 1997, to meet the new 1-year time limit on collateral attack established by the AEDPA that went into effect on April 24, 1996. We and five other circuits have, without analysis, followed the April 23, 1997, cutoff for those who already were imprisoned at the time the new law took effect. Jones v. Bertrand, 171 F.3d 499, 500 (7th Cir. 1999); Paters v. United States, 159 F.3d 1043, 1044 n.1 (7th Cir. 1998); O'Connor v. United States, 133 F.3d 548, 550 (7th Cir. 1998); Young, 124 F.3d at 796; Goodman v. United States, 151 F.3d 1335, 1337 (11th Cir. 1998); Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998); Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998); Calderon v. United States Dist. Court for the Cent. Dist. of Calif., 128 F.3d 1283, 1287 (9th Cir. 1997), overruled on other grounds, 163 F.3d 530 (9th Cir. 1998); Simmonds, 111 F.3d at 746. The issue in all of these cases was not whether the deadline should be April 23, 1997, or April 24, 1997, but rather whether prisoners whose judgments of conviction had been finalized well before the new law's date of enactment should be allowed to seek collateral relief at all. None of these cases discussed the rationale

for setting April 23 instead of April 24 as the deadline.

The second way of calculating the 1-year period, the anniversary method, closes the gates on Marcello and Zizzo when the courthouse doors shut for the day on December 1, 1998. The clock begins ticking on the day after the Supreme Court announces the denial of certiorari, which means the last day the sec. 2255 motion may be filed is the anniversary date of the certiorari denial. The basis for this method is Federal Rule of Civil Procedure 6(a), which says:

In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

See also Federal Rule of Criminal Procedure 45(a) ("[i]n computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included"). The three circuits that directly addressed whether the grace period should end on April 23, 1997, or April 24, 1997, for individuals who already were imprisoned at the time the new habeas rules took effect all adopted the anniversary method. Moore v. United States, 173 F.3d 1131, 1135 (8th Cir. 1999); Flanagan v. Johnson, 154 F.3d 196, 201 (5th Cir. 1998); Mickens v. United States, 148 F.3d 145, 148 (2d Cir. 1998). A fourth circuit also adopted April 24 as the cutoff without any analysis. Rogers, 180 F.3d at 353.

Neither the calendar-year method nor the anniversary method of counting perfectly satisfies the finicky timekeeper. The Supreme Court normally issues its decisions a few minutes after 10 a.m., Eastern time, though occasionally the court releases orders in the afternoon. If the Supreme Court denied Marcello and Zizzo's petition for certiorari at 10:01 a.m. on December 1, 1997 (9:01 a.m. Central time), the petitioners technically should still be allowed to file their sec. 2255 petition between the time the Northern District of Illinois' clerk's office opens (at 8:30 a.m.) and 9 a.m. on December 1, 1998. So, the calendar-year method gives the defendant at least a few minutes less than 1 year to file, just as the anniversary method provides the defendant up to a few hours more than 1 year to file.

Both the calendar-year and the anniversary method are reasonable--what matters is establishing an unequivocal rule that lets

litigants know where they stand and spares judges from becoming enmeshed in such nitpicking in the future. Because courts do not have stopwatches in hand when deadlines draw near, and because the anniversary date is clear and predictable and therefore easier for litigants to remember, for lawyers to put in their tickler files, and for courts to administer, we adopt the anniversary rule. The first day of the 1-year limitation period is the day after the Supreme Court denies certiorari, giving defendants until the close of business on the anniversary date of the certiorari denial to file their habeas motion. The anniversary date will be the last day to file even when the intervening period includes the extra leap year day.

Marcello and Zizzo's petition was filed a day late, and Judge Plunkett properly dismissed it as untimely. Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests, see Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452-53 (7th Cir. 1990), and limitation periods work both ways--you can be sure Marcello and Zizzo would not be pooh-poohing the prosecution's tardiness if they had been indicted one day after the statute of limitations expired for their crimes.

Marcello and Zizzo's last-gasp argument is that even though they missed the deadline by a day, the statute of limitations should be equitably tolled because the law was unclear, the delay was minimal, the prosecution was not prejudiced, and Marcello's attorney's father died 2 weeks before the deadline.

Whether to push back the deadline is a different issue than when it passed. We know that sec. 2255's period of limitation is not jurisdictional but is instead a procedural statute of limitations subject to equitable tolling. Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999). Even so, equitable tolling is granted sparingly. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). Extraordinary circumstances far beyond the litigant's control must have prevented timely filing. See Hoosier Bancorp of Indiana, Inc. v. Rasmussen, 90 F.3d 180, 183 (7th Cir. 1996); Sandvik, 177 F.3d at 1271-72. Though we sympathize with the attorney who suffered the loss of her father several weeks before the deadline, the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule. The petitioners' argument that the deadline was unclear also makes no sense, because if it was unclear, they should

have filed by the earliest possible deadline, not the latest. The deadline simply was missed. That is not grounds for equitable tolling. Taliani, 189 F.3d at 598. And that makes this all more than a little ironic because allegations of trial attorney missteps formed the basis of this sec. 2255 motion that was filed too late. The judgment of the district court dismissing the petitions as untimely is AFFIRMED.

/1 We use "petition" as a synonym for "motion," the term used in the statute.