In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3481

Randy Horton,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 50121--Philip G. Reinhard, Judge.

Argued January 19, 2000--Decided March 28, 2001/1

Before Bauer, Cudahy and Evans, Circuit Judges.

Cudahy, Circuit Judge.  Randy Horton was a leader
of a 19-person drug ring active between 1989 and
1993 in Rockford, Illinois. In 1994, a federal
jury convicted Horton of conspiring to distribute
cocaine or cocaine base, in violation of 21
U.S.C. sec. 846, and of distributing 62.6 grams
of cocaine base in two transactions, in violation
of 21 U.S.C. sec. 841(a)(1). The court sentenced
Horton to life imprisonment for the sec. 846
conviction and 40 years imprisonment, to run
concurrently, for the sec. 841 convictions.
Horton did not take a direct appeal from his
conviction, instead appealing only his sentence,
which this panel affirmed in United States v.
Russell, 96 F.3d 1450, 1996 WL 508598 (7th Cir.
Dec. 20, 1996) (unpublished order). Horton now
appeals the denial of his recent motion under 18
U.S.C. sec. 2255.

I.  Facts and Disposition Below

  We have already described the underlying drug
conspiracy in other opinions, see United States
v. Edwards, 105 F.3d 1179 (7th Cir. 1997); United
States v. Evans, 92 F.3d 540 (7th Cir. 1996);
Russell, 1996 WL 508598, at *1, so we need not do
so again. But some details of the proceedings
leading to this appeal are warranted. In 1993, a
federal grand jury returned a 15-count
indictment, charging Horton, along with 18

others, with conspiring knowingly and intentionally to possess with intent to distribute mixtures containing cocaine and cocaine base (Count I). Horton was also indicted on two substantive counts for distributing 21.6 grams of cocaine base on one occasion and 41 grams on another (Counts VII and XIII). The jury convicted Horton of all three charges against him. At sentencing, the district court determined that Horton and his co-conspirators had conspired to possess with intent to distribute about 10 kilograms of cocaine and 10 kilograms of cocaine base. See Russell, 1996 WL 508598 at *5. On December 15, 1994, the district court sentenced Horton to life in prison on the sec. 846 conspiracy count with concurrent 40-year sentences on the two substantive distribution counts. Horton appealed only his sentence to the Seventh Circuit, and we affirmed the district court on December 20, 1996. See Russell, 1996 WL 508598, at *3-*5. Horton filed a petition for writ of certiorari with the Supreme Court, which was denied on April 21, 1997. Horton did not petition the Supreme Court for rehearing.

Horton filed the present motion under 28 U.S.C. sec. 2255 in the district court on April 23, 1998, claiming that the jury instructions on the drug conspiracy count resulted in an ambiguous and unconstitutional verdict. The trial court had instructed the jury on the conspiracy count as follows:

The government does not have to prove that the alleged conspiracy involved an exact amount of cocaine or cocaine base. Neither does the government have to prove that the amount of cocaine or cocaine base charged in the indictment was distributed or possessed. However, the government must prove that the conspiracy, the distribution charges, and the possession charges involved measurable amounts of cocaine or cocaine base.

The jury's general verdict of guilty on the sec. 846 conspiracy was ambiguous, Horton argues, because the phrase "measurable amounts of cocaine or cocaine base" used in the instruction opened up the possibility that, for example, four jurors thought Horton conspired to distribute only cocaine while the other eight thought he conspired to distribute only cocaine base. This verdict, argues Horton, was therefore not unanimous and denied him his constitutional right to a jury verdict, contending that the Supreme Court's decision in Edwards v. United States, 118 S.Ct. 1475 (1998), supports this position. The government filed its response to this motion late, but the district court decided to accept the filing (by granting the government's motion

to accept the response) without a hearing. The government raised three grounds for denial of Horton's amended sec. 2255 motion: (1) Horton's original motion was untimely, since it was filed more than one year after his judgment of conviction had become final; (2) Horton's jury instruction claim was procedurally defaulted because he failed to raise this claim in his direct appeal; and (3) the Supreme Court's decision in Edwards actually supported the denial of Horton's sec. 2255 motion. Although it noted that there may be problems with the timeliness of Horton's motion, the district court denied Horton's motion on the merits. Horton moved to reconsider that ruling, a motion that the district court denied. This appeal followed.

## II.  Discussion

Horton's appeal places two issues squarely before us: (1) was his motion under sec. 2255 timely filed? And (2) is the type of drug that is the object of a sec. 846 conspiracy an element of the offense to be determined by the jury? We review de novo a district court's decision denying a motion under 28 U.S.C. sec. 2255, see Lanier v. United States, 205 F.3d 958, 962 (7th Cir. 2000), and we can affirm the district court's decision "on any ground that was not waived or forfeited in the district court." See United States v. Jackson, 207 F.3d 910, 917 (7th Cir. 2000)./2

### A.  Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, a sec. 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. sec. 2255para.6(1). Horton filed this sec. 2255 motion on April 23, 1998--a year and two days after the Supreme Court denied certiorari on his direct appeal. Although the district court opted not to address the timeliness of Horton's sec. 2255 motion, the government certainly argued it, and given the importance of procedure under the AEDPA, we will decide this issue. Therefore, we must determine whether the two extra days rendered Horton's filing untimely.

Horton contends that his sec. 2255 motion is not barred by AEDPA's one-year limitation period because his conviction did not become "final" under sec. 2255para.6(1) until after his opportunity to move the Supreme Court to reconsider its denial of certiorari had passed. Horton argues that because he had 25 days to file such a motion with the Court, see Sup. Ct. Rule

44.2, his conviction was not "final" until that 25-day period had expired. On this basis, he claims that, rather than being two days late, his sec. 2255 motion was filed 23 days before the expiration of the limitation period.

In a case decided while this opinion was in the works, this court held that a defendant's conviction becomes "final" when his petition for certiorari is denied. See United States v. Marcello, 212 F.3d 1005, 1008 (7th Cir. 2000). However, this does not quite end our analysis because the Marcello opinion does not address Horton's argument that the 25-day period during which he could have petitioned the Supreme Court for rehearing delayed the finality of his conviction. The Fifth Circuit and the Tenth Circuit have, on the other hand, recently addressed arguments similar to Horton's and reached the same conclusion we reached in Marcello: both other circuits concluded that, absent an actual suspension of an order denying certiorari by the Court or a Justice, a judgment of is "final" for purposes of the one-year limitation period in sec. 2255para.6(1) when the petition for writ of certiorari is denied. See United States v. Thomas, 203 F.3d 350, 355 (5th Cir. 2000); United States v. Willis, 202 F.3d 1279, 1280-81 (10th Cir. 2000). Marcello, Thomas and Willis all relied on Supreme Court Rule 16.3, which states:

Whenever the Court denies a petition for writ of certiorari, the Clerk will prepare, sign, and enter an order to that effect and will notify forthwith counsel of record and the court whose judgment was sought to be reviewed. The order of denial will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice.

Sup. Ct. R. 16.3. Essentially, this Rule makes plain that an "order denying certiorari is effective at the time of its entry by the Supreme Court," Marcello, 212 F.3d at 1008, barring extraordinary intervention from the Court or a Justice, see Thomas, 203 F.3d at 355-56; Willis, 202 F.3d at 1281. Nor does the mere filing for a petition for rehearing with the Supreme Court affect the legal import of the denial of certiorari. See Thomas, 203 F.3d at 356; Willis, 202 F.3d at 1281. Thus, Marcello, Thomas and Willis without exception hold that the denial of certiorari itself renders a defendant's conviction final under 28 U.S.C. sec. 2255para.6(1).

Horton, however, argues that our decision in Gendron v. United States, 154 F.3d 672 (7th Cir. 1998), cert. denied sub nom., Ahitow v. Glass,

119 S.Ct. 1758 (May 17, 1999), requires this panel to disagree with Marcello and the other circuits we have noted and hold that his conviction was not "final" until the period during which he could have petitioned the Supreme Court for rehearing, but did not, had passed. In Gendron, we held that when a federal prisoner decides not to seek certiorari at all, his conviction becomes final on the date this court issues the mandate in his direct criminal appeal, see 154 F.3d at 674, and Horton's argument begins, quite simply, with the proposition that, because the court of appeals' mandate issues only after the period to petition for rehearing expires, see Fed. R. App. P. 41(b) & (d)(1), a conviction does not become "final" under Gendron until after the possibility of a petition for rehearing expires. So, in this case, Horton argues that, even though he did not seek a rehearing from the Supreme Court, his conviction did not become "final" until after his opportunity to do so was foreclosed. Horton's proposal seemingly points to a tension between Marcello and Gendron, but his argument is clearly misplaced, as a look at the applicable court rules demonstrates.

Petitions for rehearing before the courts of appeals and petitions for rehearing before the Supreme Court have strikingly different effects. Filing a timely petition for rehearing in the court of appeals automatically stays the mandate until the petition for rehearing is decided. See Fed. R. App. P. 41(d)(1). Thus, the filing of a petition for rehearing delays the court of appeals' last act in disposing of the case, which is the issuance of the mandate. However, a petition for rehearing before the Supreme Court does essentially nothing with respect to the matters of concern here. See Sup. Ct. R. 16.3. A rehearing petition does not stay the denial of certiorari: the denial of certiorari is effective when issued, and it disposes of the case before the Supreme Court. See id., see also Marcello, 212 F.3d at 1008; Thomas, 203 F.3d at 356; Willis, 202 F.3d at 1281. Thus, the critical difference for the purpose of sec. 2255para.6(1) finality between a petition for rehearing before the court of appeals and before the Supreme Court is that the former automatically delays the termination of the court's involvement with the case and the latter does not. Because Gendron's holding can be read to imply that, once a court's last required action is taken to dispose of the case (there the issuance of the appellate mandate), Gendron itself supports a finding that Horton's conviction became "final" when the Supreme Court denied certiorari on his direct appeal. After Horton's petition for a writ of certiorari was denied on April 21, 1997, no

federal court needed to take another action to dispose of Horton's appeal. Since no further action was required from any court, Horton's conviction was "final" at that time. We, therefore, see no reason to depart from our recent holding in Marcello, and we hold that a defendant's conviction becomes "final" under sec. 2255para.6(1) when the Supreme Court denies the defendant's petition for a writ of certiorari (absent a suspension order from the Court or a Justice), irrespective of the opportunity to petition the Supreme Court for rehearing. Accordingly, Horton's conviction became final on April 21, 1997. Because Horton's sec. 2255 motion was not filed until April 23, 1998, one year and two days later, his sec. 2255 motion was untimely and properly dismissed by the district court.

B. Merits

Although we hold that Horton's sec. 2255 motion is untimely, we will, for the sake of completeness, briefly address his merits argument, which was, of course, the basis of the district court's analysis. Horton argues that the jury instructions were constitutionally flawed because they stated that the jury could convict him upon finding that "measurable amounts of cocaine or cocaine base" were distributed as a result of the conspiracy. The propriety of this jury instruction turns on whether the type of drug that forms the object of a sec. 846 conspiracy is an element of the offense or merely a sentencing factor. "An element of the crime must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt." United States v. Hardin, 209 F.3d 652, 654 (7th Cir. 2000). "A sentencing factor, by contrast, need not be set forth in the indictment, may be decided by the judge, and must be proved only by a preponderance of the evidence or perhaps in extreme circumstances by clear and convincing evidence." Id.

The Supreme Court has already indicated on which side of this distinction the jury instructions in question here will lie. In affirming this court's decision in United States v. Edwards, 105 F.3d 1179, 1180 (7th Cir. 1997), the Court addressed the constitutional validity of the very sentencing instructions at issue in this case. 523 U.S. 511 (1998). Indeed, the appellants in Edwards were Horton's co-defendants, and they were challenging the same jury instruction that Horton challenges now, but on a different basis.

In Edwards, the appellants argued that they should have been sentenced based on a cocaine-

only conspiracy because the general jury verdict was ambiguous as to whether the object of the conspiracy was cocaine only, cocaine base only, or both. This court rejected these arguments and explained that, ultimately, what a jury believes about which drug the conspirators distributed was not conclusive at sentencing. See Edwards, 105 F.3d at 1181. Horton, however, challenges his conviction on the ground that the jury may not have been unanimous on an element of the offense--in his argument, the type of drug. But our conclusion in Edwards that the type of drug distributed by a conspiracy is a sentencing factor to be determined by the sentencing judge, see id., 105 F.3d at 1181-82, necessarily implies that type is not an element of the offense. See Hardin, 209 F.3d at 654. This was confirmed in the Supreme Court's affirmance of our decision, where it clearly explained that "regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the 'controlled substances' at issue consisted of cocaine, crack, or both." Edwards v. United States, 523 U.S. at 514. By treating the type of drug as a sentencing factor, the Supreme Court's Edwards decision firmly supports the conclusion that the type of drug is not an element of the offense. This conclusion is not changed by the fact that type of drug is sometimes a factor that must be determined by a jury--when such a determination will increase the maximum penalty authorized by statute. See Apprendi v. New Jersey, 120 S.Ct. 2348 (2000).

It is possible that, had Horton contested the judge's finding as to the quantity of drugs, and timely filed his motion, he may have had an argument under Apprendi. Whether classified as a sentencing factor or as an element of the offense, a fact cannot increase the penalty for a crime beyond the prescribed statutory maximum applicable to the crime, as presented to the jury: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 120 S.Ct. at 2362-63. The Supreme Court in Apprendi eschewed rigid use of the distinction between "elements" and "sentencing factors" for the purpose of determining whether submission to a jury is required: "the relevant inquiry is not one of form, but of effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" 120 S.Ct. at 2365.

What a jury believes about the object of a conspiracy--whether, for example, it involves cocaine or cocaine base--may matter in some

circumstances, but only if "the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy." Edwards, 523 U.S. at 515. This is so, explained the Court, "because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines." Id. The district court found that Horton conspired to distribute more than five kilograms of cocaine, and more than 50 grams of cocaine base--and either of these findings independently yields a statutory maximum sentence of life imprisonment. See 21 U.S.C. sec. 841(b)(1)(A)./3 Because it is uncontested that Horton possessed the amount of drugs required to place him under the penalty provision of sec. 841(b)(1)(A), the sentence he received was not in excess of the statutory maximum, which is life imprisonment regardless of the type of drugs involved. Thus, in this case, the type of drug is properly considered a "sentencing factor," a matter for the judge to decide by a preponderance of the evidence, and not an element of the offense.

Apprendi does not alter this conclusion. The Apprendi Court was careful to reserve the term "sentencing factor" for "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense." 120 S.Ct. at 2365 n.19. This is distinguished from a "sentence enhancement," which increases the sentence beyond the statutorily authorized maximum, and is "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." Id.

Had Horton contested the trial court's finding as to quantity, he would have had a potential Apprendi claim. This is because, if drug quantity is not proven to the jury beyond a reasonable doubt, a defendant's rights are violated when the sentence dictated by the drug quantity is greater than the statutory maximum prescribed by sec. 841(b). See United States v. Nance, 236 F.3d 820 (7th Cir. 2000). But we need not reexamine Horton's sentence in light of Apprendi, because Horton has not appealed the sentencing judge's finding as to quantity of drugs, and he has already lost on the timeliness issue.

III.  Conclusion

For the above-stated reasons, and because we find the remainder of Horton's arguments to be without merit, the judgment of the district court is Affirmed.

/1 This case was originally decided on June 29, 2000. Three days earlier, the Supreme Court decided Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), which is relevant to the merits of this case. While Apprendi does not change the ultimate outcome here, our original opinion was withdrawn to incorporate a discussion of Apprendi, and we thereupon reissue it.

/2 Horton argues that the government has waived its timeliness argument on appeal because it filed the response to his sec. 2255 motion late in the district court. Under Rule 6(b) of the Federal Rules of Civil Procedure, a district court has the authority to accept a late filing, but Horton argues that the district court erred in doing so here because an extension can only be given for "excusable neglect." See id. The district court certainly had the discretion to determine whether to accept the government's late filing on the basis of excusable neglect, and in doing so we do not believe that it abused its discretion. See Silva v. City of Madison, 69 F.3d 1368, 1377 (7th Cir. 1995). Therefore, Horton's argument that the government waived its untimeliness argument fails.

/3 Under 21 U.S.C. sec. 846, persons who conspire to commit an offense "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."