# United States Court of Appeals
## For the First Circuit

No. 00-1657

ALFRED W. TRENKLER,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Lipez, Circuit Judges.

Charles W. Rankin, with whom Bruce W. Edmands, Richard S. Jacobs and Mahoney Hawkes LLP, were on brief, for appellant.

Kevin P. McGrath, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and David S. Mackey, Special Assistant United States Attorney, were on brief, for appellee.

October 16, 2001

**LIPEZ, Circuit Judge**.  This case requires us to address the interaction between two avenues of relief from a federal conviction and sentence:  28 U.S.C. § 2255, which permits a motion to set aside a sentence allegedly imposed in violation of the Constitution or federal law, and Rule 33 of the Federal Rules of Criminal Procedure, which permits a motion for a new trial on the basis of newly discovered evidence.  In particular, we must decide whether the one-year statute of limitations for § 2255 motions imposed by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA"), either is tolled during the pendency of a Rule 33 motion based on newly discovered evidence, or, in the alternative, does not commence until the possibility of relief under Rule 33 is exhausted.

Like the district court, we conclude that the statute of limitations for a § 2255 motion begins to run upon the completion of a prisoner's direct appeal from the judgment of conviction, notwithstanding any subsequent proceedings under Rule 33.  We also agree with the district court that there is no statutory basis for tolling the limitations period while the prisoner seeks post-conviction relief under Rule 33.  Finally, assuming the availability of equitable tolling, we conclude that the district court did not abuse its discretion in finding that

-3-

the circumstances of this case do not present any grounds for application of that doctrine.

## I.

On June 24, 1993, a federal grand jury returned a three-count superceding indictment against Alfred Trenkler and Thomas Shay, charging them with illegal receipt and use of an explosive in violation of 18 U.S.C. §§ 844(d) and (i), and conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (an original, sealed indictment had been issued against both men on December 16, 1992). Trenkler moved to sever the cases, and Shay was tried first. At his trial, Shay sought to call Dr. Robert Phillips as an expert witness. Dr. Phillips was prepared to testify that Shay suffered from a mental disorder that caused him to tell self-aggrandizing lies, making his various incriminating statements unreliable. The district court excluded Dr. Phillips's testimony on the ground that it did not satisfy the standards for expert testimony set forth in Rule 702 of the Federal Rules of Evidence. Shay was convicted, and on appeal he argued that the district court erred in refusing to admit the testimony. We

agreed, holding on June 22, 1995, that it was a "clear error in judgment for the district court to exclude the testimony under any plausible interpretation of Rule 702." United States v. Shay, 57 F.3d 126, 133-34 (1st Cir. 1995). On remand, the district court rejected the government's argument that Fed. R. Evid. 403 provided an alternate basis for excluding Dr. Phillips's testimony, and ordered a new trial for Shay. Shay eventually pled guilty, and was sentenced to 12 years in prison.

At the same time that Shay was appealing his conviction, Trenkler's trial was proceeding in the district court. Shay's incriminating statements were introduced against Trenkler, as they tended to show that Shay had been involved in the bombing and had not acted alone. Trenkler's trial counsel did not attempt to use Dr. Phillips's testimony to undermine Shay's statements, believing that any effort to introduce the doctor's testimony would be futile in light of the district court's refusal to admit it at Shay's trial. Trenkler was convicted on all counts of the indictment on November 29, 1993, and sentenced to life in prison. We affirmed his conviction on July 18, 1995. United States v. Trenkler, 61 F.3d 45 (1st Cir. 1995) (Trenkler I). He did not file a petition for certiorari.

On December 22, 1995, Trenkler moved for a new trial under Rule 33, which permits such a motion to be filed up to

three years after a verdict when it is "based on newly discovered evidence."[1]  Trenkler argued that our decision in Shay rendered Dr. Phillips's testimony "newly discovered evidence" within the meaning of Rule 33.  He explained that, although he was aware of Dr. Phillips's testimony at the time of his trial, he did not know until our decision on June 22, 1995, that the testimony was admissible.  The district court denied the motion, reasoning that Trenkler's trial counsel's belief that the testimony would not be admitted did not make it unavailable, and that our conclusion that the testimony was admissible in Shay's case did not render it "newly discovered."  We affirmed in an unpublished opinion issued on January 6, 1998.  United States v. Trenkler, No. 97-1239, 1998 WL 10265 (1st Cir. Jan. 6, 1998) (Trenkler II).

Trenkler then filed the instant motion under § 2255 to set aside his conviction on the ground that his trial counsel's failure to offer Dr. Phillips's testimony violated his Sixth Amendment right to effective assistance of counsel.  After AEDPA, such a motion generally must be filed within one year of "the date on which the judgment of conviction becomes final."

---

[1] Under Rule 33, "[a] motion for a new trial based on any other grounds [than newly discovered evidence] may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7-day period."

28 U.S.C. § 2255(1).[2]  For prisoners whose convictions became final before AEDPA was enacted, we have held that the limitations period expires on April 24, 1997, one year after the statute's effective date.  Rogers v. United States, 180 F.3d 349, 355 (1st Cir. 1999).  The district court concluded that Trenkler's  § 2255 motion was subject to that deadline, his conviction having become final in 1995, when we affirmed it in

---

[2] As amended by AEDPA, § 2255 provides that:

A 1-year statute of limitations shall apply to a motion under this section.  The limitations period shall begin to run from the latest of--

> (1)  the date on which the judgment of conviction becomes final;
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  The parties agree that only subsection (1) is at issue here.

<u>Trenkler I</u>.  Accordingly, it dismissed the § 2255 motion – filed

on January 5, 1999 – as time-barred.  This appeal followed.[3]

## II.

Trenkler argues that a timely filed Rule 33 motion

affects § 2255's statute of limitations in one of two ways.

First, he contends that a conviction is not "final" for purposes

-------

[3] To assist the reader of this opinion, we set forth a chronology of important dates:

| | |
|---|---|
| Dec, 12, 1992: | Trenkler and Shay were indicted. |
| June 24, 1993: | The grand jury returned the superceding, three-count indictment. |
| July 27, 1993: | Shay was convicted at trial. |
| Nov. 29, 1993: | Trenkler was convicted at trial. |
| June 22, 1995: | We vacated Shay's conviction on direct appeal and remanded his case to the district court. |
| July 18, 1995: | We affirmed Trenkler's conviction on direct appeal (<u>Trenkler I</u>). |
| Sept. 5, 1995: | Our mandate issued in <u>Trenkler I</u>. |
| Dec. 5, 1995: | The period during which Trenkler could have filed a petition for certiorari to review our decision in <u>Trenkler I</u> ended. |
| Dec. 22, 1995: | Trenkler filed a Rule 33 motion based on newly discovered evidence. |
| Apr. 24, 1996: | AEDPA's effective date; one-year statute of limitations began to run. |
| Feb. 4, 1997: | The district court denied Trenkler's Rule 33 motion. |
| Apr. 24, 1997: | The one-year statute of limitations running from AEDPA's effective date ended. |
| Jan. 6, 1998: | We affirmed the district court's denial of Trenkler's Rule 33 motion (<u>Trenkler II</u>). |
| Jan. 16, 1998: | The district court ordered a new trial for Shay. |
| Jan. 5, 1999: | Trenkler filed the § 2255 motion under consideration. |

of § 2255(1) until the prisoner has exhausted the possibility of relief under Rule 33. Second, he argues that even if the limitations period commences at the conclusion of appellate review of the judgment of conviction, the statute of limitations is suspended during the pendency of any subsequent Rule 33 motion by virtue of tolling provisions imported from other sections of AEDPA. If we reject those statutory arguments, Trenkler proposes a third ground for relief, arguing that the doctrine of equitable tolling excuses his failure to file his § 2255 motion within the one-year period.

We analyze Trenkler's claims in turn. We review the issues of statutory interpretation de novo, United States v. Michaud, 243 F.3d 84, 85-86 (1st Cir. 2001), and the district court's denial of equitable tolling for an abuse of discretion, Delaney v. Matesanz, --- F.3d ---, 2001 WL 1001086, at *5-*6 (1st Cir. Sept. 5, 2001) (explaining that district court's rejection of equitable tolling "on the facts" is reviewed for abuse of discretion); Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 377 (1st Cir. 1991) ("[F]ashioning or withholding equitable relief . . . rests uniquely within the discretion of the trial court.").

## A. Accrual

Trenkler's first argument focuses on when the statute of limitations began to run. Here, the relevant accrual date is the date on which Trenkler's conviction became "final" within the meaning of § 2255(1). Although Trenkler accepts the prevailing view that a conviction becomes "final" upon the completion of direct review, he insists that the proceedings before the district court and this court with regard to his Rule 33 motion were part of his "direct appeal." Accordingly, he argues that the statute of limitations did not begin to run until January 6, 1998, when we affirmed the district court's denial of his Rule 33 motion.

Although we have not addressed the question directly, we consistently have treated Rule 33 motions filed after the opportunity for direct appeal as a form of collateral attack on a conviction rather than part of the process of direct review. Thus, in <u>Dirring</u> v. <u>United States</u>, 353 F.2d 519, 520 (1st Cir. 1965), we held that the district court did not err in refusing to appoint counsel to prosecute the defendant's post-appeal Rule 33 motion for a new trial. We explained that:

> Appellant had counsel 'through appeal,' as required by the Criminal Justice Act, 18 U.S.C. § 3006A(c). We do not construe that phase to include motions for a new trial. Nor do we so interpret the Sixth Amendment. There must be an end. After final

-10-

> conviction the appointment of counsel must
> rest in the discretion of the court.

Id. We reaffirmed that holding in United States v. Tajeddini, 945 F.2d 458, 470 (1st Cir. 1991) (per curiam), abrogated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470 (2000), stating that "a federally convicted defendant is not entitled under the Criminal Justice Act, 18 U.S.C. § 3006A, or the Sixth Amendment, to appointment of counsel on a motion for a new trial." That rule, we continued, applies to any Rule 33 motion based on newly discovered evidence and filed after the opportunity for direct appeal has expired, regardless of whether the defendant pursued a direct appeal and lost, or simply neglected to file a notice of appeal within the applicable period: "We do not see why the convicted defendant who foregoes a direct appeal and whose conviction has become final should be treated differently from the defendant who has chosen to appeal with respect to entitlement to counsel, on a collateral attack of that conviction." Id.; see also United States v. Lee, 513 F.2d 423, 424 (D.C. Cir. 1975) (holding that right to counsel does not extend to Rule 33 motion based on newly discovered evidence and filed after direct appeal); United States v. Birrell, 482 F.2d 890, 892 (2d Cir. 1973) (same); cf. Kitchen v. United States, 227 F.3d 1014, 1019 (7th Cir. 2000) (noting that Rule 33 motion filed after completion of direct appeal "'plainly

-11-

is "collateral" in the usual sense of that term'" (quoting United States v. Woods, 169 F.3d 1077, 1078 (7th Cir. 1999)).

Only the Sixth Circuit has addressed the precise question whether Rule 33 motions are included in the process of direct review when they are based on newly discovered evidence and filed after direct appeal either has or could have been taken. In Johnson v. United States, 246 F.3d 655 (6th Cir. 2001), it held that such "delayed" Rule 33 motions should be treated as collateral challenges to the judgment of conviction and, as such, "do not affect the finality of a judgment for purposes of the AEDPA." Id. at 658 n.4, 659. The court found support for that conclusion in Rule 4(b) of the Federal Rules of Appellate Procedure. See id. at 658-59. Rule 4(b)(1) provides that a defendant's notice of appeal in a criminal case normally must be filed within ten days of the entry of judgment. Subsection 4(b)(3)(A) modifies that general rule, stating that if a defendant files a Rule 33 motion within the ten-day period,[4]

---

[4] Unless based on newly discovered evidence, a Rule 33 motion must be filed within seven days of the entry of judgment, and so always will fall within that ten-day period. See supra note 1. Rule 33 motions based on newly discovered evidence, however, may be filed up to three years after the entry of judgment. Accordingly, Rule 4(b)(3)(A)(ii) provides that "if based on newly discovered evidence," a Rule 33 motion will operate to toll the deadline for filing a notice of appeal "only if the motion is made no later than 10 days after the entry of the judgment."

the notice of appeal need only be filed within ten days of the entry of the order disposing of that motion. Subsection 4(b)(3)(C) then provides that "[a] valid notice of appeal is effective – without amendment – to appeal from an order disposing of" a Rule 33 motion filed in accordance with subsection (A). Rule 4(b) thus effectively incorporates Rule 33 motions into the process of direct appeal, but only when they are filed within ten days of entry of the judgment of conviction. The lack of any analogous provisions to so incorporate motions based on newly discovered evidence and filed outside the ten-day period strongly suggests that such motions are <u>not</u> properly considered part of the direct appeal.

That inference is strengthened when one considers the practical effects of Trenkler's proposed rule. Presumably, treating "delayed" Rule 33 motions based on newly discovered evidence as part of the process of direct review would mean that no conviction could be deemed final for purposes of § 2255(1) until the expiration of the three-year period for filing such motions. Or, perhaps, a prisoner's conviction could become final if the court of appeals affirmed the judgment of conviction and the Supreme Court denied certiorari, and then lose its finality if the prisoner later claimed to have discovered new evidence, only to become final again once the

-13-

Rule 33 motion was adjudicated. Either possibility is unacceptable. The first approach "severely undercut[s] Congress' intent in enacting the AEDPA by greatly extending the time in which a petition may properly bring a § 2255 challenge." Johnson, 246 F.3d at 659. The second permits "every defendant seeking to file an untimely § 2255 motion [to] do an end-run around the AEDPA limitation period by filing a timely, but ultimately meritless, Rule 33 motion." Id.

We will not adopt an interpretation of the term "final" in § 2255(1) that so clearly conflicts with the purpose of the AEDPA statute of limitations. Accordingly, we hold that a Rule 33 motion for a new trial is not part of the "direct appeal" from a judgment of conviction unless incorporated into that appeal by virtue of Rule 4(b). Therefore, Trenkler's direct appeal consisted only of his appeal to this court in Trenkler I, and his conviction became final either on September 5, 1995, when we issued our mandate in that case, or on December 5, 1995, when the time for filing a petition for certiorari expired.[5] As

_____

[5] We have yet to decide when a conviction becomes "final" under § 2255(1) where, as here, the prisoner opted not to seek certiorari review in the Supreme Court after his conviction was affirmed in the court of appeals. Compare United States v. Torres, 211 F.3d 836, 839-40 (4th Cir. 2000) (holding that conviction becomes final when court of appeals' mandate issues), and Gendron v. United States, 154 F.3d 672, 674 (7th Cir. 1998) (same), with United States v. Garcia, 210 F.3d 1058, 1060-61 (9th Cir. 2000) (holding that conviction becomes final when time

-14-

both dates predate AEDPA, the limitations period began to run on AEDPA's effective date, April 24, 1996.

**B.  Tolling**

Trenkler argues that even if the statute of limitations began to run on AEDPA's effective date, it was tolled during the pendency of his Rule 33 motion.  He offers two bases for that conclusion.

1.  Statutory Tolling

First, Trenkler suggests that we should import into § 2255 the tolling provision contained in 28 U.S.C. § 2244(d)(2).  Section 2244(d)(1) prescribes a one-year limitations period for petitions filed by state prisoners under 28 U.S.C. § 2254, the state-conviction counterpart of § 2255.  Like motions filed under § 2255, § 2254 petitions for release from state custody generally must be filed within one year of "the date the conviction became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  However, § 2244(d)(2) provides that the statute of limitations for § 2254 petitions is

_____

for seeking certiorari expires), United States v. Gamble, 208 F.3d 536, 537 (5th Cir. 2000) (same), United States v. Burch, 202 F.3d 1274, 1279 (10th Cir. 2000) (same), and Kapral v. United States, 166 F.3d 565, 571 (3d Cir. 1999) (same).  We need not address that issue here, as Trenkler's § 2255 motion was untimely under either approach.

-15-

tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Trenkler asks us to read a similar tolling provision into § 2255 for federal prisoners filing Rule 33 motions for a new trial on the basis of newly discovered evidence. Congress, he argues, did not intend to adopt different rules for federal and state prisoners; its failure to include an explicit tolling provision in § 2255 to mirror that in § 2244(d)(2) was simply an oversight that we should correct here.

We decline that invitation. It has long been settled that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (internal quotation marks omitted). Thus, the omission in § 2255 of the tolling language that is present in § 2244(d)(2) gives rise to a negative inference that the statute of limitations for § 2255 is not tolled while federal prisoners pursue other forms of post-conviction relief. See United States v. Prescott, 221 F.3d 686, 689 (4th Cir. 2000) ("Rather than providing support for

-16-

[tolling under § 2255], we believe that § 2244(d)(2) counsels against tolling in the present case.").

Trenkler argued in his brief that the interpretive canon described in Russello has no application here because "in a world of silk purses and pigs' ears, [AEDPA] is not a silk purse in the art of statutory drafting." Lindh v. Murphy, 521 U.S. 320, 326 (1997). As Trenkler's counsel acknowledged at oral argument, that argument was largely foreclosed by Duncan v. Walker, 121 S. Ct. 2120 (2001), in which the Supreme Court relied on that same canon in interpreting § 2244(d)(2).[6] Moreover, even without resort to Russello, we would find ample cause to conclude that Congress's decision to provide for tolling in § 2244(d)(2) but not § 2255 was an intentional one. Federal habeas corpus review of state convictions under § 2254 implicates principles of comity that are inapplicable in the context of federal review of federal convictions under § 2255. "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity

_____

[6] In Duncan, the Supreme Court held that the phrase "State post-conviction and other collateral review" in § 2244(d)(2) embraces only "other collateral review" in state court, reasoning that Congress's specific reference to both "state" and "federal" review in other provisions of AEDPA indicated that its omission of the word "federal" in § 2244(d)(2) was intentional. See 121 S. Ct. at 2124-25.

-17-

to review this claim and provide any necessary relief." O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999); see also 28 U.S.C. § 2254(b)(1) (requiring state prisoners to exhaust available state post-conviction remedies before filing § 2254 petition for federal relief). As the Supreme Court explained in Duncan, the tolling provision contained in § 2244(d)(2) reflects Congress's attempt to promote the exhaustion requirement while preserving a meaningful opportunity for state prisoners to seek federal review. 121 S. Ct. at 2128. In the absence of an explicit tolling provision, state prisoners could obtain relief in federal court only in the unlikely event that they were able to exhaust all available state review within the one-year limitations period for § 2254 petitions.

Federal prisoners like Trenkler do not face the same problem. Nothing in AEDPA obligated Trenkler to exhaust the opportunity for relief under Rule 33 before seeking review of his conviction and sentence under § 2255. He was free to file a § 2255 motion immediately without fear that it would be dismissed for failure to exhaust available post-conviction remedies. We acknowledge, however, that the availability of post-conviction relief under Rule 33 and under AEDPA can create some uncertainty for federal prisoners who, like Trenkler, must decide whether to seek relief under Rule 33 or § 2255. On one

-18-

hand, the strict statute of limitations for § 2255 motions counsels in favor of pursuing that avenue of relief first.  On the other hand, the standard for relief under Rule 33 "is likely more enticing to a prisoner than the provisions of § 2255." Prescott, 221 F.3d at 688.  Under Rule 33, the district court has broad discretion to grant a new trial "if the interests of justice so require."  Fed. R. Crim. Proc. 33.  Section 2255, by contrast, authorizes the district court to grant relief only if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255.  Thus, federal prisoners may well prefer to seek relief in the first instance under Rule 33 rather than § 2255.  Once a Rule 33 motion has been filed and is pending before the district court or the court of appeals, there is a certain inefficiency in compelling a prisoner to initiate new – and possibly duplicative – proceedings under § 2255. However, AEDPA's one-year statute of limitations sometimes will require just that.  See Prescott, 221 F.3d at 689.  The solution is not, as Trenkler suggests, to read a tolling provision into § 2255.  Rather, to the extent that the overlap between § 2255

and Rule 33 creates the potential for inefficiency, district courts are "well equipped" to alleviate that problem through consolidation of the various motions for collateral relief.  Id.[7]

2.  Equitable Tolling

Trenkler argues that even if we conclude that he failed to comply with AEDPA's statute of limitations, we should excuse his tardiness on the basis of equitable tolling.  A number of courts have held that in "'rare and exceptional'" circumstances equitable tolling may be available in a § 2255 case brought under AEDPA.  United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)); accord, e.g., Dunlap v. United States, 250 F.3d 1001, 1006-07 (6th Cir. 2001); Green v. United States, 260 F.3d 78, 82-83 (2d Cir. 2001) (citing Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)); Prescott, 221 F.3d at 687-88; United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) (citing Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999)); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); Miller v. New

---

[7] The Seventh Circuit has adopted a slightly different approach:  when the district court receives a Rule 33 motion, it must ask the prisoner whether he intends to file motion under § 2255.  If the answer is yes, the district court must delay consideration of the Rule 33 motion until it receives the § 2255 motion, and consider both challenges at once.  See O'Connor v. United States, 133 F.3d 548, 551 (7th Cir. 1998).

<u>Jersey State Dept. of Corrections</u>, 145 F.3d 616, 617-19 & n.1 (3d Cir. 1998); <u>but</u> <u>see</u> <u>United States</u> v. <u>Pollard</u>, --- F.3d ---, 2001 WL 1001093, at *9 (D.C. Cir. Aug. 7, 2001) (concluding that Congress did not intend § 2255 to be subject to equitable tolling).  We have yet to address that question, and we decline to do so here.  <u>See</u>, <u>e.g.</u>, <u>Delaney</u>, 2001 WL 1001086, at *6 (reserving question whether doctrine of equitable tolling is available under § 2255 where facts of case did not support application of doctrine).  The district court, assuming <u>arguendo</u> that equitable tolling might apply, prudently addressed the issue and resolved it adversely to Trenkler.  We review that ruling for abuse of discretion, <u>see</u> <u>id.</u> at *5-*6, and affirm.

In other contexts, we have held that the doctrine of equitable tolling is available only in rare cases where, for example, "extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline."  <u>Fradella</u> v. <u>Petricca</u>, 183 F.3d 17, 21 (1st Cir. 1999); <u>accord</u> <u>Bonilla</u> v. <u>Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 279 (1st Cir. 1999); <u>Torres</u> v. <u>Superintendent of Police of Puerto Rico</u>, 893 F.2d 404, 407-08 (1st Cir. 1990).  Equitable tolling is not warranted where the claimant simply "failed to exercise due diligence in preserving his legal rights."  <u>Irwin</u> v. <u>Dep't of Veterans Affairs</u>, 498 U.S.

-21-

89, 96 (1990); see also Wilson v. United States, 23 F.3d 559, 562 (1st Cir. 1994) ("We see no basis for extending the exceptional doctrine of equitable tolling to a party who, by all accounts, merely failed to exercise his rights."). "In a nutshell, equitable tolling is reserved for exceptional cases . . . ." Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998). Consistent with that view, those courts that have permitted equitable tolling under § 2255 have applied it sparingly, and have denied equitable tolling where, for example, a § 2255 motion was filed only one day late because of confusion over the applicable deadline, see Marcello, 212 F.3d at 1010, or because counsel decided five days before the deadline to send the motion via ordinary mail, see Sandvik, 177 F.3d at 1271-72.

Trenkler argues that he satisfies the exacting standard for equitable tolling for a variety of reasons. First, he states, without elaboration, that "compelling reasons of personal and judicial economy compelled [him] to await a final determination on his Motion for a New Trial before filing his §2255 petition." As the party seeking to invoke the doctrine of equitable tolling, Trenkler bears the burden of establishing the basis for it. I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51, 54 (1st Cir. 1999). Such conclusory assertions rarely will suffice to meet that burden. However,

-22-

even if adequately explained, Trenkler's argument would fall far short of the showing needed to support equitable tolling. Trenkler may well be correct that it would have been inefficient for the district court to have passed on his § 2255 motion while this court was considering his Rule 33 motion. That fact, however, speaks only to whether the district court should have decided Trenkler's § 2255 motion during the pendency of his Rule 33 motion, not when Trenkler should have filed it. As the Fourth Circuit recently explained, "[c]onsolidation of motions under Rule 33 and § 2255 is an option, and district courts are well equipped to resolve these motions in a timely and expedient manner." Prescott, 221 F.3d at 689. More fundamentally, however, the fact that a statute of limitations creates certain inefficiencies or inconveniences hardly qualifies as an "extraordinary circumstance" that "prevent[s]" a litigant from complying with the strictures of the applicable limitations period. Fradella, 183 F.3d at 21.

As a second justification for the application of equitable tolling, Trenkler states that it was not his fault that it took more than two years for his Rule 33 motion – which was filed within § 2255's limitations period – to work its way through the district court and then to this court on appeal. Such a lengthy period of adjudication, Trenkler contends, was a

"circumstance beyond [his] control that prevented timely filing." That argument might have some force if Trenkler were, in fact, barred from filing a motion under § 2255 while his Rule 33 motion was pending, or if federal prisoners were required to exhaust such avenues of relief before filing a motion under § 2255. However, as our analysis of Trenkler's statutory arguments makes clear, neither of those propositions is true.[8] Put simply, nothing prevented Trenkler from filing a § 2255 motion while his Rule 33 motion was pending, just as nothing compelled him to file a motion under Rule 33 in the first place rather than seeking relief under § 2255. Therefore, the fact that it took more than two years for his Rule 33 motion to wend its way through the courts, although outside Trenkler's control, provides no basis for equitable tolling.[9] Cf. Prescott,

---

[8] Trenkler relies on language from United States v. Dorsey, 988 F. Supp. 917, 919 (D. Md. 1998), to the effect that a § 2255 motion should not be filed "prior to the completion of any direct appeal." As we explained with regard to Trenkler's accrual argument, however, our decision affirming the dismissal of his Rule 33 motion was not part of Trenkler's "direct appeal."

[9] At oral argument, Trenkler's counsel suggested for the first time that equitable tolling is appropriate here because Trenkler's post-conviction counsel erred in 1995 when he filed a motion under Rule 33 instead of § 2255. We express no view as to the merits of that argument. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Given Trenkler's

221 F.3d at 688 ("Prescott's current predicament originated not in his decision to request a new trial pursuant to Rule 33, but his inattention to the limitation period of § 2255.").

Trenkler's third argument for equitable tolling rests on the timing of various decisions regarding the admissibility of Dr. Phillips's testimony. That testimony was arguably relevant to both Shay and Trenkler, as the government introduced Shay's incriminating statements at both men's trials. Shay attempted to introduce Dr. Phillips's testimony at his trial; Trenkler did not. After Shay appealed his conviction to this court, we held on June 22, 1995, that the district court erred in refusing to admit Dr. Phillips's testimony under Rule 702. We remanded the case to the district court so that it could determine whether the testimony should have been admitted under Rule 403. On January 16, 1998, the district court answered that question in the affirmative, and ordered a new trial for Shay.

Trenkler argues that, since his § 2255 motion features the claim that his trial attorney's failure to introduce Dr. Phillips's testimony constituted ineffective assistance in

failure to raise the argument in either of his appellate briefs, "we see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Id.

-25-

violation of the Sixth Amendment, the most "appropriate" and efficient route was to "await a determination as to the admissibility of the doctor's testimony." Although that argument suffers from several flaws, there is one that predominates: the determination for which Trenkler claims he needed to wait was made well before § 2255's statute of limitations even began to run, when we held on June 22, 1995, that the district court should have admitted Dr. Phillips's testimony under Rule 702. Indeed, Trenkler's Rule 33 motion was based entirely on the argument that he had "newly discovered" that Dr. Phillips's testimony was admissible because of our decision on June 22, 1995. That he felt it prudent to wait for the completion of yet another round of litigation before filing a motion under § 2255 does not excuse his failure to comply with the one-year limitations period.

Finally, Trenkler argues that his sentence of life in prison supports the application of equitable tolling to forgive his untimely filing. Without minimizing the significance of the life sentence imposed, we must reject that argument. Trenkler cites no authority, nor do we find any, for the proposition that equitable tolling is justified because of the severity of the sentence imposed.

In sum, Trenkler has presented "what is at best a garden variety claim of excusable neglect." <u>Irwin</u>, 498 U.S. at 97. Assuming that the doctrine of equitable tolling applies, we conclude that the district court did not abuse its discretion in denying equitable tolling on those facts.

**<u>Affirmed.</u>**