*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 23-CV-0165 & 23-CV-0217

ROGER TOVAR, APPELLANT/CROSS-APPELLEE,

v.

REGAN ZAMBRI LONG, PLLC, *et al.*, APPELLEES/CROSS-APPELLANTS.

Appeal from the Superior Court of the
District of Columbia
(2022-CA-002053-M)

(Hon. Ebony M. Scott, Trial Judge)

(Argued March 21, 2024                    Decided June 27, 2024)

*Benjamin R. Ogletree*, with whom *Faith Kalman Reyes* was on the brief, for appellant/cross-appellee.

*Paul J. Maloney*, with whom *Stephen G. Rutigliano* was on the brief, for appellees/cross-appellants.

Before HOWARD and SHANKER, *Associate Judges*, and THOMPSON, *Senior Judge*.

SHANKER, *Associate Judge*: Appellant Roger Tovar brought a legal malpractice action against the law firm Regan Zambri Long, PLLC, and two of its attorneys (collectively, "Regan"), alleging that, in representing him in a negligence action against McKesson Corporation—which ultimately settled while it was on

appeal following a favorable verdict for Mr. Tovar—Regan failed to assert a particular claim for damages. Mr. Tovar alleges that because Regan failed to seek damages for his future medical care expenses, he lost the opportunity to win a multi-million-dollar award.

Regan moved to dismiss the complaint or in the alternative for summary judgment. The trial court granted Regan's motion to dismiss on two alternative grounds: (1) Mr. Tovar, in settling his negligence action against McKesson, released Regan from future liability; and (2) Regan's decision to forgo a claim for future medical care expenses was protected under the judgmental immunity doctrine. Mr. Tovar appeals, contending that (1) the trial court erred in granting the motion to dismiss because the court considered material outside of the complaint and applied the wrong standard for dismissal under Super. Ct. Civ. R. 12(b)(6), and (2) to the extent the court essentially granted summary judgment for Regan, it did so by relying on erroneous or disputed facts and without granting Mr. Tovar's Super. Ct. Civ. R. 56(d) request for additional discovery so that he could oppose Regan's summary judgment motion. Regan cross-appeals, arguing that the trial court erred in finding that Mr. Tovar's claim was not barred by the statute of limitations as a ground to dismiss the claim.

We affirm the trial court's statute-of-limitations determination, although on different grounds, but otherwise reverse the dismissal of the complaint and remand for further proceedings.[1]

## I.    Background

## A.    Factual Background

Because the trial court purportedly granted a motion to dismiss, we derive the following facts, which we take to be true, from Mr. Tovar's complaint.  In 2012, an employee of McKesson Corporation rear-ended Mr. Tovar's car, which was stopped at a red light.  Mr. Tovar suffered several injuries, including traumatic brain injury ("TBI"), which caused cognitive impairment, short-term memory loss, chronic fatigue syndrome, and other physical ailments.  During his treatment, Mr. Tovar's TBI-related symptoms worsened, and he could no longer work as an information technology security professional.

Mr. Tovar sued McKesson and its employee and hired Regan Zambri Long, PLLC, to represent him.  Regan attorney Paul Cornoni developed Mr. Tovar's litigation strategy and tried the case.  Although Mr. Tovar's TBI was permanent and

---

[1] Mr. Tovar's motion for leave to file a sur-reply is granted and the Clerk shall file Mr. Tovar's sur-reply.

4

would require a lifetime of medical care, Regan failed to assert a claim for Mr. Tovar's future medical expenses and failed to inform him of this plan. Instead, Regan requested damages only for Mr. Tovar's bodily injuries and lost future wages.

At the end of the trial, the jury awarded Mr. Tovar $500,000 for bodily injuries and $3,297,573 in lost wages. McKesson appealed but then the parties entered into a settlement agreement, and this court dismissed the appeal. According to the complaint, had Regan sought future medical expenses, Mr. Tovar "would have, more likely than not, presented evidence of his need for extensive future medical treatment and care at trial, would have been successful, received a multi-million-dollar award to compensate [him] for the lifetime of future care, and would have collected said award from" McKesson.

The parties also briefed Regan's alternative motion for summary judgment, and the following facts appear to be undisputed (although the trial court did not so find because it stated that it was granting Regan's motion to dismiss, not its summary judgment motion). Before trial, Regan believed that Mr. Tovar could achieve a more favorable damages verdict by forgoing compensation for *past* medical expenses because those expenses could act as a low anchor for the jury. Regan explained this to Mr. Tovar, who approved the strategy. Following the trial, Mr. Tovar was happy with the verdict amount. After McKesson appealed the verdict, Mr. Tovar

knowingly and voluntarily entered into a settlement agreement with McKesson and settled the matter for the full amount of damages awarded by the jury.

## B.    Procedural History

In 2022, Mr. Tovar filed a complaint against Regan, asserting one count of legal malpractice/professional negligence for its failure to pursue compensation for future medical expenses.  Mr. Tovar alleges that by omitting this claim, Regan breached its duty of care, and that but for the breach, Mr. Tovar would have received a multi-million-dollar award for a lifetime of TBI-related medical expenses.

Regan filed a motion to dismiss and/or for summary judgment, pursuant to Super. Ct. Civ. R. 12(b)(6) and 56, respectively.  First, Regan argued that Mr. Tovar's complaint should be dismissed because it was (1) barred by the statute of limitations, as it was filed more than three years after Mr. Tovar knew of the alleged harm and it was not tolled by the Superior Court's COVID-19 tolling orders, (2) precluded by Mr. Tovar's knowing and voluntary settlement of the underlying matter, and (3) speculative as to whether Mr. Tovar would have obtained a higher award had evidence of his future medical care expenses been presented at trial. Second, Regan argued that it was entitled to judgment as a matter of law because (1) any alleged error was protected under the judgmental immunity doctrine, (2) Mr. Tovar consented to the underlying trial strategy, and (3) Mr. Tovar could not

meet his burden of establishing that Regan's alleged error proximately caused him injury.

Mr. Tovar opposed, arguing that dismissal or summary judgment in favor of Regan would be improper because the complaint sufficiently pleaded a cause of action and additional discovery under Super. Ct. Civ. R. 56(d) was necessary to decide the summary judgment motion. The trial court held a hearing, and the parties presented arguments concerning both motions.

In a written order, the trial court ruled that Mr. Tovar's claim was not time-barred because the limitations period had been tolled, but granted Regan's motion to dismiss on two alternative grounds.[2] First, relying on a release clause in the settlement agreement between Mr. Tovar and McKesson, the court found that Mr. Tovar had knowingly and voluntarily released Regan from future claims stemming from the underlying matter. Second, the court found that Regan was protected from liability under the judgmental immunity doctrine because it had made a strategic decision to forgo future medical care costs.

---

[2] For reasons we explain below, we treat one of the rulings as granting summary judgment instead of dismissal. *See infra* Section II.A.2.b.

The court stated that it was not reaching Regan's alternative request for summary judgment but observed that, if it had reached the issue, the following facts would have warranted granting summary judgment for Regan: (1) Regan's decision to not assert a claim for future medical expenses was reasonable and a protected exercise of legal judgment; (2) Mr. Tovar approved the trial strategy; (3) Mr. Tovar knowingly and voluntarily settled the underlying negligence matter; and (4) Mr. Tovar failed to present an expert to support his claim that Regan breached its duty of care.

Accordingly, the trial court dismissed Mr. Tovar's complaint with prejudice. The court did not explicitly address Mr. Tovar's request for additional time for discovery.

This appeal and cross-appeal followed.

## II.    Analysis

Boiled to their essence, Mr. Tovar's claims in this court are that the trial court purportedly granted a motion to dismiss but it did not limit its analysis of his complaint to the question whether, on its face, it pleads a cognizable cause of action; and, to the extent the court essentially granted Regan summary judgment, it relied

on erroneous or disputed facts and improperly denied him additional discovery under Super. Ct. Civ. R. 56(d).

We agree that the trial court erred in granting Regan's motion to dismiss. Although the court did not err in considering the settlement agreement, the agreement was not an appropriate basis for dismissing Mr. Tovar's claim because it did not release Regan from future liability.

As for the court's judgmental-immunity ruling, we review that ruling as a grant of summary judgment because judgmental immunity is an affirmative defense and the court considered matters outside the complaint. Given the record before us, we are unable to resolve whether summary judgment was proper because the court failed to address Mr. Tovar's request for additional discovery before ruling on summary judgment.

Accordingly, we vacate the trial court's order and remand for the court to consider Mr. Tovar's Rule 56(d) request for additional discovery before determining whether, based on undisputed material facts, summary judgment is appropriate on grounds of judgmental immunity.

On cross-appeal, Regan claims that the trial court erred in denying its motion to dismiss on statute-of-limitations grounds. Specifically, Regan asserts that the trial

court erroneously found that the limitations period had been tolled under the Superior Court's emergency COVID-19 orders (although Regan agrees with the trial court that the limitations period should be calculated using three consecutive 365-day periods despite an intervening leap year). We agree with Regan that the COVID-19 orders did not toll Mr. Tovar's limitations period, but we conclude that Mr. Tovar nonetheless filed his complaint within three years of the accrual of his claim and therefore affirm the trial court's ruling that Mr. Tovar's claim is not time-barred.

## A.     The Dismissal and/or Grant of Summary Judgment

Mr. Tovar contends that the trial court erred in granting Regan's motion to dismiss and/or for summary judgment. We agree.

### 1.     Standard of Review and Applicable Law

"A Rule 12(b)(6) motion [to dismiss] tests the legal sufficiency of the complaint . . . ." *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 954 (D.C. 2000). "We review an order granting a motion to dismiss de novo." *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation omitted). "Any uncertainties or ambiguities in the complaint must be resolved in favor of the pleader." *Hillbroom*, 17 A.3d at 572 (internal quotation omitted).

"Generally speaking, a defendant raising a 12(b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself." *Scott v. FedChoice Fed. Credit Union*, 274 A.3d 318, 322 (D.C. 2022) (internal quotation omitted). "If . . . matters outside the pleadings are presented to and not excluded by the court, the [12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Super. Ct. Civ. R. 12(d). In that case, "the trial court must give the parties notice of its intention to consider summary judgment and an adequate opportunity to present affidavits or other matters appropriate to ruling on such a motion." *Katz v. District of Columbia*, 285 A.3d 1289, 1314 (D.C. 2022) (internal quotation omitted).

A court may, however, consider documents that are incorporated in the plaintiff's complaint without converting the motion to dismiss into one for summary judgment. *See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1024-25 (D.C. 2007) (collecting cases). Accordingly, a defendant may present authentic

copies of such documents in their motion to dismiss. *Oparaugo v. Watts*, 884 A.2d 63, 76 n.10 (D.C. 2005).

## 2. Discussion

### a. The Settlement Agreement

Mr. Tovar contends that the trial court both erroneously considered and erroneously interpreted the settlement agreement in determining that, in light of its terms, he failed to state a claim against Regan. We disagree with Mr. Tovar's first contention and hold that the court's consideration of the settlement agreement was proper. We agree, however, that the trial court erroneously found that Mr. Tovar's malpractice claim was barred by the terms of the settlement agreement.

### i. Consideration of the Settlement Agreement

Mr. Tovar argues that the trial court could not consider the settlement agreement in ruling on the Rule 12(b)(6) motion because his complaint made only a limited reference to his settlement with McKesson and the agreement was not central to his malpractice claim. We disagree.

In our view, the trial court properly considered the settlement agreement in the circumstances of this case. First, although we have occasionally concluded that courts can refer to documents that are referenced in the complaint and "central" to

the plaintiff's claim, *Oparaugo*, 884 A.2d at 76 n.10, we have not always expressly required centrality, *see, e.g., Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 178 (D.C. 2006) (promissory notes referenced in plaintiff's original complaint were "incorporated in the complaint" and properly considered); *Bell v. First Invs. Servicing Corp.*, 256 A.3d 246, 251 (D.C. 2021) ("[T]he court may consider the complaint itself and any documents it incorporates by reference." (internal quotation and alteration omitted)). Second, Mr. Tovar's complaint—which alleges that "[he] and the [McKesson] defendants reached a settlement" to resolve the underlying matter—incorporated the settlement agreement by reference. *See Moore v. United States Dep't of State*, 351 F. Supp. 3d 76, 84 & n.3 (D.D.C. 2019) (complaint alleging that plaintiff "entered a settlement agreement with [defendant]" incorporated agreement by reference); *Halldorson v. Sandi Grp*, 934 F. Supp. 2d 147, 152 (D.D.C. 2013) (complaint alleging that plaintiff's claims "led to a[ ] . . . settlement" incorporated the settlement agreement by reference) (internal quotation omitted). Third, Mr. Tovar does not contest the authenticity of the settlement agreement—he contests only its relevance and application to his malpractice claim. *See Halldorson*, 934 F. Supp. 2d at 152 (considering an incorporated agreement because "plaintiff does not challenge the validity of the Settlement Agreement or its terms, only the effect of those terms on this litigation"); *Scott*, 274 A.3d at 325 n.23 (holding that the court could consider a credit card agreement attached to defendant's

motion to dismiss where plaintiff had referred to the agreement and its authenticity was undisputed). Accordingly, the trial court was permitted to consider the settlement agreement without converting the motion to dismiss into one for summary judgment.[3]

### ii. The Legal Effect of the Settlement Agreement

The settlement agreement between Mr. Tovar and McKesson contained the following release provision:

> Tovar . . . does . . . hereby remise, release, acquit and forever discharge McKesson Corporation and all of its affiliates, predecessors, successors, parents, subsidiaries, officers, directors, employees, agents, contractors, and insurers (collectively referred to as "Releasees") from any and all past, present or future actions, causes of action, claims, demands, liabilities, suits, damages, costs, expenses or obligations of any kind whatsoever, which Tovar ever had, now has, or may ever have against the Releasees, arising from or relating to a motor vehicle accident that occurred on or about April 26, 2012 in the District of Columbia . . .

---

[3] Even if the settlement agreement was not incorporated, Mr. Tovar has failed to show that he was prejudiced by any error in treating the motion as one for summary judgment. *See Chamberlain*, 931 A.2d at 1025 ("[N]o prejudice can result from nonobservance of Rule 12(b)'s notice-and-opportunity requirement where it is clear that the dispositive facts will remain undisputed and unchanged." (internal quotation and alterations omitted)). Here, the terms of the settlement agreement are undisputed and any technical error in considering the settlement agreement was harmless.

Interpreting this provision, the trial court found that Mr. Tovar had "unambiguously" agreed to release Regan from future liability and thus he did not have a cognizable cause of action against Regan. On appeal, Mr. Tovar contends that the express terms of the provision did not release Regan from liability and that the act of settling the underlying matter did not effectively operate as a waiver of claims against Regan. We agree.

"A release is a form of contract, and the rules of contract construction govern its interpretation." *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 342 (D.C. 1998). "Where the language is clear and unambiguous, its plain language is relied upon in determining the parties' intention." *Id.* If the terms of the release "leave no room for doubt, the effect of the release can be determined as a matter of law." *Id.*

Here, the release provision does not list Regan as one of the "Releasees," and it is unequivocal that only "McKesson Corporation" was released from any further action related to the accident. Thus, dismissing Mr. Tovar's claim on the grounds that the settlement agreement released Regan from liability was error. *See id.* (holding that under its plain terms, the settlement agreement's failure to discharge appellee was facially unambiguous, and there was no reason to conclude otherwise).

Regan contends that, notwithstanding the release provision, Mr. Tovar's acceptance of the settlement functioned as a complete resolution of the underlying matter, including any challenge to the adequacy of his attorneys' strategy. We are unpersuaded.

Settlement agreements resolve disputes between parties but do not necessarily address the separate professional duties owed by attorneys to their clients. When a client alleges that the attorney's conduct was unreasonable or constituted malpractice, the existence of a settlement agreement between the underlying parties does not always serve as a bar to a client's later malpractice action. *See E.B.P., Inc. v. Cozza & Steuer*, 694 N.E.2d 1376, 1379 (Ohio Ct. App. 1997) (concluding that a malpractice claim remains viable if the attorney's conduct was unreasonable or constitutes malpractice); *cf. Durkin v. Shea & Gould*, 92 F.3d 1510, 1517-18 (9th Cir. 1996) ("[A] court-approved settlement or judgment does not immunize an attorney from a subsequent malpractice action.").

Here, Mr. Tovar's settlement may have resolved his claims against McKesson, but the act of settling does not bear on whether Regan's conduct was reasonable and does not necessarily absolve Regan of any professional negligence that it may have committed during the representation. *See Monastra v. D'Amore*, 676 N.E.2d 132, 136 (Ohio Ct. App. 1996) ("If the evidence should show that

[attorney's] defective representation diminished [the client's] ability to reach a successful settlement or succeed at trial, we see no reason why a waiver of that malpractice claim should be implied by reason of the settlement."); *Grace v. Law*, 969 N.Y.S.2d 661 (N.Y. App. Div. 2013) (acceptance of a settlement agreement in underlying action did not waive plaintiff's malpractice claim against attorneys), *aff'd*, 24 N.Y.3d 203 (N.Y. 2014). A settlement award that is seemingly favorable to the client does not necessarily establish that an attorney met the requisite standard of care. We therefore conclude that in these circumstances, Mr. Tovar's acceptance of the settlement agreement did not waive a claim for malpractice against Regan and dismissal of the complaint on that basis was erroneous.[4]

---

[4] In contending otherwise, Regan relies on two cases that are distinguishable. In both cases, the clients were precluded from arguing that their inadequate settlements were caused by their attorneys' malpractice because the clients had voluntarily accepted the settlements despite being aware that the settlement agreements had shortcomings due to their attorneys' substandard representation. *See Venable LLP v. Overseas Lease Grp., Inc.*, No. CV 14-02010, 2015 WL 4555372, at *3 (D.D.C. July 28, 2015); *Vogel v. Touhey*, 828 A.2d 268, 288 (Md. Ct. Spec. App. 2003). Here, however, Mr. Tovar claims that he did not know about Regan's alleged decision to omit a claim for future medical expenses or its alleged view that omitting such claim was prudent. Additionally, he argues that as "a non-attorney" he was unaware of "his legal right to pursue such a claim" because he was never informed that these damages were available. Therefore, at this stage, Mr. Tovar has adequately pleaded that he was not aware of Regan's alleged substandard representation before signing the settlement agreement and did not knowingly and voluntarily enter into the settlement agreement despite its shortcomings.

### b. Judgmental Immunity

Mr. Tovar contends that the trial court erred in dismissing his complaint under Rule 12(b)(6) based on the judgmental immunity doctrine. We agree with his assertion that the trial court effectively issued a summary judgment ruling instead of a dismissal. The question, then, is whether Mr. Tovar had a reasonable opportunity to respond as required under Rule 12(d). Because the trial court failed to address Mr. Tovar's request for additional discovery before it ruled on Regan's summary judgment motion, *infra* Section II.B, we remand for further proceedings.

In its motion for summary judgment, Regan attached Mr. Cornoni's affidavit as evidence of Mr. Cornoni's deliberative process in deciding to forgo a claim for Mr. Tovar's future medical care expenses at trial. Mr. Cornoni claimed that he conducted a careful analysis of at least sixteen factors, had "communications with several members of the DC Bar, including my partner, Patrick Regan, among others," and concluded that pursuing a plan for future healthcare expenses "would have been a terrible mistake."

For example, Mr. Cornoni averred that he evaluated the medical opinions of Mr. Tovar's health care providers, Mr. Tovar's EMT records, emergency room records, MRI scans, and photographs of the car accident, which tended to show that Mr. Tovar's pursuit of medical care was unnecessary and that he had not suffered

traumatic brain injury from the incident. Mr. Cornoni also claimed that he believed that placing Mr. Tovar's past medical history at issue would have made Mr. Tovar vulnerable to "extensive cross-examination" concerning his "doctor-shopping," which led him to see approximately forty different doctors; the "many strange comments" he made in his journal and to his healthcare providers; and the fact that he did not currently require medical care from his providers. In sum, according to Mr. Cornoni, putting forth a life care plan for future medical expenses was unwise because it was unsupported by most of Mr. Tovar's treatment providers (including his primary care physician) and would have damaged Mr. Tovar's credibility, leading to a significantly lower verdict. Instead, Mr. Cornoni's trial strategy "focus[ed] on the effect Mr. Tovar's mild traumatic brain injury had on his life and his inability to work."

A plaintiff must establish three elements to prevail on a legal malpractice claim: "the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009). The standard of care that a lawyer must exercise is "that degree of reasonable care and skill expected of lawyers acting under similar circumstances." *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979).

The judgmental immunity doctrine "provides that an informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim." *Biomet Inc.*, 967 A.2d at 666. Judgmental immunity is an affirmative defense that is generally not amenable to resolution at the motion-to-dismiss or summary-judgment stage. *See id.* at 665.

The trial court found that Regan's decision to omit Mr. Tovar's claim for future medical expenses constituted a protected legal judgment. The court noted Regan's exercise of discretion in pursuing "the most favorable outcome" for Mr. Tovar, opting to "not second-guess the very trial strategy that once made [Mr. Tovar] very happy."

The factual bases supporting Regan's "informed professional judgment," however, are not evident from the face of the complaint. *See Biomet Inc.*, 967 A.2d at 666. Instead, they are contained in Mr. Cornoni's affidavit, which was attached to Regan's written motion. While the court did not directly cite to Mr. Cornoni's affidavit, it could not have evaluated the merits of the judgmental-immunity defense without it. Consequently, as the affidavit was a matter outside the pleadings, the court ruled as a matter of summary judgment rather than dismissal for failure to state a claim. *See Washkoviak*, 900 A.2d at 178-79 (the affidavits attached "unquestionably alleged facts extrinsic to the pleadings" and the court's reliance on

the affidavit's contents in making its findings "effectively converted" the motion to dismiss into one for summary judgment).

This was not necessarily problematic under Rule 12 as long as Mr. Tovar had "a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion." *See* Super. Ct. Civ. R. 12(d). As we discuss next in Section II.B, however, the trial court never considered Mr. Tovar's argument that he required additional discovery. Furthermore, the trial court's ruling gives us additional pause because the court appeared to rely on disputed issues of material fact, including whether Regan had made a conscious decision to forgo a claim for future medical expenses.

### B. Failure to Address Discovery Request

Mr. Tovar contends that the trial court's grant of summary judgment was premature because, under Super. Ct. Civ. R. 56(d), he should have been granted additional time for discovery before the court ruled on Regan's motion. We hold that granting summary judgment before ruling on Mr. Tovar's discovery request was error. We therefore vacate and remand so that the court can consider whether additional discovery is warranted regarding the issue of judgmental immunity, and, whether or not it grants that discovery, to decide the motion for summary judgment based on undisputed material facts.

### 1. Standard of Review and Applicable Law

"Rule 56(d) affords protection against the premature or improvident grant of summary judgment." *Nawaz v. Bloom Residential, LLC*, 308 A.3d 1215, 1229 (D.C. 2024) (internal quotation omitted). A court may defer considering the motion or deny it if the party opposing summary judgment "adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Travelers Indem. Co. of Illinois v. United Food & Com. Workers Int'l Union*, 770 A.2d 978, 994 (D.C. 2001) (discussing then-Rule 56(f)) (internal quotation omitted). The party cannot simply claim that discovery is incomplete or that they do not have enough facts to oppose summary judgment; rather, they "must demonstrate precisely how additional discovery will lead to a genuine issue of material fact." *Id.*

When presented with a Rule 56(d) request, "[t]he court has a duty . . . to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling" on the summary judgment motion. *Id.* "Rule 56[d] requests should be liberally construed" and a denial is reviewed for abuse of discretion. *Id.* at 993-94 (internal quotation omitted).

## 2.    Discussion

Summary judgment is appropriate only "after adequate time for discovery," and it is unclear, given the record before us, whether adequate time was afforded to Mr. Tovar in light of his Rule 56(d) request.  *See Kibunja v. Alturas, L.L.C.*, 856 A.2d 1120, 1124-25 (D.C. 2004) (internal quotation omitted).

Mr. Tovar claimed that he required additional discovery to resolve specific questions pertaining to Regan's judgmental-immunity defense.[5]  Specifically, he asserted that he needed to depose Regan and the D.C. Bar members whom Mr. Cornoni had allegedly consulted to explore the details, timing, and accuracy of their communications regarding his case.  Additionally, he asserted that he needed

---

[5] As an initial matter, Mr. Tovar's affidavit alone is insufficient to invoke the protection of Rule 56(d).  In it, he merely cites to his lack of personal insight regarding why Regan dropped a claim for future TBI-related care expenses and does not clarify how further discovery would reveal any significant factual disagreement.  If a party's affidavit is insufficient, however, a "flexible approach" is sometimes warranted if other factors "sufficed to alert the trial court of the need for further discovery."  *Travelers Indem. Co. of Illinois*, 770 A.2d at 965-66 (holding that granting summary judgment was premature, even though the party's affidavit was insufficient, because party's opposition and outstanding discovery request, both of which were filed with the affidavit, explained the specific basis and need for further discovery) (internal quotation omitted).

Here, Mr. Tovar's written opposition explained why he sought additional discovery to rebut the reasonableness of Regan's alleged strategic decision to forgo the claim and sufficiently alerted the court to the issue.  *See id.*  Accordingly, Mr. Tovar's request under Rule 56(d) was adequate.

the identities of the medical providers who Mr. Cornoni alleged were unsupportive of a TBI-related care plan, citing the existence of other medical providers who believed that Mr. Tovar had TBI and the absence of records showing that Regan had discussed the necessity of TBI-related care with these providers.

The trial court's order makes no mention of Mr. Tovar's request. Regan argues, though, that that does not matter because the discovery Mr. Tovar requested would not have demonstrated that Mr. Cornoni's decision was not protected by judgmental immunity. Regan emphasizes that Mr. Cornoni's affidavit indisputably showed that he undertook a thorough assessment of the strengths and weaknesses of Mr. Tovar's claims and exercised reasonable care.

The resolution of these questions is best left to the discretion of the trial court. *Id.* at 995 & n.21 ("[I]t is incumbent on the court to make sure that the parties have had an opportunity to develop the record before ruling on a summary judgment motion, particularly where, as here, a party claims the need for discovery."). The trial court, however, failed to exercise that discretion, and we decline to decide the matter in the first instance. *See Jaiyeola v. District of Columbia*, 40 A.3d 356, 373 (D.C. 2012) (declining to affirm summary judgment on a separate ground unaddressed by the trial court, especially in light of "unresolved discovery questions" raised in appellant's Rule 56(d) affidavit); *Flax v. Schertler*, 935 A.2d

1091, 1102 (D.C. 2007) (remanding because the court failed to consider whether Ms. Flax was entitled to avoid summary judgment pending further discovery on her claims and because the record was insufficient to conclude that the facts left the trial court only with the option to deny further discovery).  Accordingly, we vacate the grant of summary judgment and remand for further proceedings.[6]

### C.    Statute of Limitations

In its cross-appeal, Regan argues that the trial court erroneously rejected its argument that Mr. Tovar's claim was time-barred.  We agree with the trial court that the claim was timely but on different grounds.

### 1.    Standard of Review

"Generally, the statute of limitations is invoked as an affirmative defense, and the defendant bears the burden of showing that a claim is time-barred." *Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1019-20 (D.C. 2013).  "At the Rule 12(b)(6) stage, a court should not dismiss on statute of limitations grounds unless the claim is time-barred on the face of the complaint." *Id.*  at 1020.  Accordingly, our review

---

[6] We do not pass on the merits of Mr. Tovar's discovery request and leave open the possibility for the trial court to grant summary judgment based on undisputed facts after it resolves the request.

of the court's statute of limitations ruling is de novo. *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 885 (D.C. 2008).

## 2. Discussion

It is undisputed that Mr. Tovar filed his legal malpractice claim on May 9, 2022, and that the applicable limitations period is three years. D.C. Code § 12-301(8). The parties dispute, however, (1) when the limitations period for Mr. Tovar's claim began running, (2) whether the Superior Court's emergency COVID-19 orders tolled the limitations period, and (3) whether, if the limitations period was not tolled, Mr. Tovar timely filed his claim.

We affirm the trial court's conclusion that the complaint was timely, albeit for different reasons. *See Grimes v. D.C., Bus. Decisions Info. Inc.*, 89 A.3d 107, 112 n.3 (D.C. 2014) ("Where there will be no procedural unfairness, we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge . . . ." (internal quotation omitted)). We refrain from deciding the precise date when the limitations period began running because Regan concedes that the limitations period began running at the latest on May 7, 2019 (the date that the Praecipe of Satisfaction of Judgment was filed with the court), and, using that date, Mr. Tovar filed his complaint by the three-year deadline.

### a. COVID-19 Tolling Orders

"In the event of a natural disaster or other emergency situation," the Chief Judge of the Superior Court for the District of Columbia may "enter such order or orders as may be appropriate to delay, toll, or otherwise grant relief from the time deadlines imposed by otherwise applicable laws or rules."[7]  D.C. Code § 11-947(a).

On March 19, 2020, in response to the COVID-19 pandemic, the Chief Judge issued the first of several amended orders tolling the statute of limitations period. The order provided, in relevant part, that

> [u]nless otherwise ordered by the court, all deadlines and time limits in statutes, court rules, and standing and other orders issued by the court that would otherwise expire before May 15, 2020 including *statutes of limitations*, are

---

[7] Tolling or extending a time deadline beyond fourteen days requires the consent of the Joint Committee on Judicial Administration.  D.C. Code § 11-947(d). The Joint Committee has specific responsibilities over the administration of the District of Columbia court system and is comprised of the Chief Judge and one associate judge of the Court of Appeals and the Chief Judge and two associate judges of the Superior Court.  *Id.* § 11-1701.

At the onset of the COVID-19 pandemic, on March 18, 2020, the Joint Committee issued an order authorizing the Chief Judges of the District of Columbia Court of Appeals and Superior Court to toll or extend deadlines during the emergency period, commencing from the order's issuance.  D.C. Joint Comm. on Jud. Admin. Order, Order Regarding Operation of the DC Courts During the Coronavirus Emergency at 2 (March 18, 2020).  Drawing from this authority, the Chief Judge of the Superior Court amended the Joint Committee's order and extended all deadlines that would have expired during the emergency period.

> suspended, tolled, and extended during the period of the current emergency.

Super. Ct. Order at 2 (amended Mar. 19, 2020) (emphasis added). The next amended order, issued on May 14, 2020, added a separate section pertaining to civil cases, retaining the same language and moving only the placement of "statute[s] of limitations."

> Unless otherwise ordered by the court, all deadlines and time limits in statutes (including *statute[s] of limitations*), court rules, and standing and other orders issued by the court that would otherwise expire during the period of emergency are suspended, tolled and extended during the period of emergency . . . .

*Id.* at 2 (amended May 14, 2020) (emphasis added). The tolling period was extended in a series of subsequent amendments, and the orders retained this same language until the Chief Judge suspended tolling for civil cases on March 30, 2021.[8]

The trial court concluded that "*all* statutes of limitations were tolled between March 18, 2020 and March 30, 2021," even if the expiration did not fall within that period, and thus that that year-plus period did not count against Mr. Tovar. The parties dispute whether the emergency tolling orders tolled only limitations periods that *expired during* the period covered by the orders or essentially *paused* all

---

[8] *See id.* at 3 (amended June 19, 2020); *id.* at 3 (amended August 13, 2020), *id.* at 3 (amended November 5, 2020); *id.* at 3 (amended January 13, 2021); *id.* at 3 (amended March 30, 2021).

limitations periods—including Mr. Tovar's, which did not expire during the emergency period—during the period that the tolling orders were in place.

Principles of statutory construction guide our interpretation of the tolling orders. *Cf. Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 65 (D.C. 1980) (utilizing the same methods of statutory construction in interpreting Superior Court procedural rules as the court would for a statute); *see also In re Hosein*, 300 A.3d 68, 85 (Md. 2023) (Hotten, J., concurring) (applying canons of statutory interpretation in interpreting administrative tolling order issued by Maryland Chief Judge). Accordingly, our review is de novo. *See Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024).

We first consider whether the language is "plain and admits of no more than one meaning." *United States v. Facon*, 288 A.3d 317, 328 (D.C. 2023) (internal quotation omitted). We examine the words "according to their ordinary sense and with the meaning commonly attributed to them." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation omitted).

The language of the tolling orders is plain and unambiguous. The orders state that "all deadlines and time limits . . . including statute[s] of limitations . . . that *would otherwise expire during the period of emergency* are suspended, tolled and

extended during the period of emergency." *Id.* at 2 (amended May 14, 2020) (emphasis added). The phrase "that would otherwise expire during the period of emergency" modifies all the listed terms having "deadlines and time limits," including statutes of limitations. Thus, to qualify for tolling, the deadline must have fallen within the emergency period, which was March 18, 2020, to March 30, 2021.[9]

We conclude that this is the most natural reading of the tolling orders. The trial court, however, found that "*all* statutes of limitations were tolled between March 18, 2020 and March 30, 2021, so long as they fell within the tolling period." Although other Superior Court judges have followed this interpretation, *see Berg. v. Hickson*, No. 21-CA-1977-V, at 3-4 (D.C. Super. Ct. Aug. 19, 2021); *Benitez v. Ingram*, No. 18-7957, 2021 WL 9667365, at *1, n.1 (D.C. Super. Ct. June 2, 2021); *Crown v. Gronigen*, 22-CA-121-B, at 4 (D.C. Super. Ct. June 2, 2022), we respectfully disagree.

---

[9] The addendum issued by the Presiding Judge of the Civil Division on January 21, 2021, supports our interpretation. The addendum clarified that "[i]f an event before the start of the tolling period *triggered a deadline that falls within the tolling period*, the number of days remaining before the original deadline on March 18 are added to the end of the tolling period." Addendum to the General Order Concerning Civil Cases (amended Jan. 21, 2021) (emphasis added). The plain language, again, indicates that the *deadline* must "fall[ ] within the tolling period" for the limitations period to be tolled.

The trial courts that have applied a "pausing" approach for all limitations periods appeared to be concerned that adopting a narrower interpretation "would lead to an unjust result for the unfortunate hypothetical litigant." *See Richards v. Hilliard*, No. 23-CAB-1452, at 5 (May 9, 2023) (declining to follow the approach adopted by other Superior Court judges). For example, a litigant whose claim arose on April 1, 2018, would have been required to file their claim by April 1, 2021. Had their claim arisen just one day earlier, on March 30, 2018, however, their three-year deadline would have fallen within the tolling period, extending the deadline to file suit until April 2022. *See id.* (citing orders).

We are unconvinced that this hypothetical scenario creates such an absurd result as to countermand the clear intent expressed by the Chief Judge. *See id.* at 6 (perceiving "nothing irrational" about tolling limitations periods only where the deadline expired during the emergency, under the reasoning that a plaintiff and lawyer "should not be forced to meet and investigate their claims during the heart of the pandemic but that those activities [were] safe once the judicial emergency was lifted").

Nor are we convinced that this interpretation is implausible or unreasonable, especially given that courts in other jurisdictions also restricted tolling to cases where the limitations period expired within a defined timeframe. *See, e.g.*, In re

Covid-19 Precautionary Measures, Administrative Order No. 7 at 2 (Del. June 5, 2020) ("Statutes of limitations . . . that would otherwise expire during the [emergency] period . . . are hereby extended . . . . [S]tatutes of limitations . . . that are not set to expire [during the emergency period] are not extended or tolled by this order."); Order of the Chief Justice of the Supreme Court of North Carolina (May 21, 2020) ("All periods of limitation that were set to expire [during the emergency period] . . . inclusive of those dates, are hereby extended . . . ."); Renewed and Amended Order Suspending In-Person Court Proceedings Related to New Hampshire Circuit Court and Restricting Public Access to Courthouses at 4 (Mar. 27, 2020) ("Statutes of limitations . . . that would otherwise expire during the period [during the emergency period] are hereby extended . . . . [S]tatutes of limitations . . . that are not set to expire [during the emergency period] are not extended or tolled by this order.").

Accordingly, we conclude that, at least for civil cases, the tolling orders tolled the limitations period only in cases where the limitations period expired during the March 18, 2020, to March 31, 2021, emergency period. Although the parties dispute the specific date the limitations period was triggered, under all three of Regan's proposed dates, the applicable deadlines fall outside the emergency period and thus do not trigger tolling.

Having concluded that tolling is inapplicable, we turn to whether Mr. Tovar timely filed his complaint within three years.

### b.       Anniversary Rule

Assuming that the latest possible date of accrual offered by Regan, May 7, 2019, is correct, the remaining question is how to calculate the limitations period from that date.

Regan contends that a three-year period is equal to 1,095 days (365 days x 3) (and, although the trial court relied on tolling, it also adopted this number).  In Regan's view, because the 1,095th day after May 7, 2019, was May 6, 2022, Mr. Tovar's claim was untimely.  Mr. Tovar, on the other hand, argues that because 2020 was a leap year and consisted of 366 days, the three-year period is equal to 1,096 days.  Under Mr. Tovar's calculation, the limitations period ended on May 7, 2022, a Saturday, which then extended the deadline until the following Monday, May 9, 2022—the day he filed.  We agree with Mr. Tovar.

In calculating limitations periods measured in years, courts have applied either the "calendar method" or the "anniversary method."  *Singh v. Att'y Gen. U.S.*, 807 F.3d 547, 550 n.5 (3d Cir. 2015).  Under the calendar method, one year is measured as "a consecutive 365-day period," even during a leap year.  *Habibi v. Holder*, 673

F.3d 1082, 1087-88 (9th Cir. 2011). The date the cause of action accrues is counted toward the limitations period, so the last day to file ends on the preceding day of the following year(s). *See United States v. Marcello*, 212 F.3d 1005, 1008-09 (7th Cir. 2000). Here, three consecutive 365-day periods from May 7, 2019, would be May 6, 2022, rendering Mr. Tovar's filing on May 9, 2022, untimely.

Under the anniversary method, "[t]he anniversary date is the last day to file even when the intervening period includes the extra leap year day." *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003) (internal quotations omitted). The date the cause of action accrues is not counted toward the limitations period. *Marcello*, 212 F.3d at 1009. Here, the triggering event fell on May 7, 2019. The three-year anniversary of this event was therefore May 7, 2022, a Saturday, and, under Super. Ct. Civ. R. 6(a)(1)(C), Mr. Tovar's filing on the following Monday, May 9, 2022, was timely.

Because the D.C. Code does not specify the method of computation for limitations periods stated in a term of years, we look to Super. Ct. Civ. R. 6(a) for the following guidance:

> (1) *Period Stated in Days or a Longer Unit*. When the period is stated in days or a longer unit of time:
>
> > (A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays and legal holidays; and

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or a legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Although Super. Ct. Civ. R. 6(a) does not describe how to count a leap year, Super. Ct. Civ. R. 6(a) is virtually identical to the corresponding federal rule, Fed. R. Civ. P. 6(a). *See* D.C. Code § 11-946 ("The Superior Court shall conduct its business according to the Federal Rules of Civil Procedure . . . ."). "[W]hen a local rule and a federal rule are identical, we may look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule." *Goldkind v. Snider Bros.*, 467 A.2d 468, 472 (D.C. 1983) (internal quotation, footnote, and alteration omitted).

Federal courts have adopted the anniversary method, which is consistent with the method of time computation under Fed. R. Civ. P. 6(a). *See, e.g.*, *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1007-08 (9th Cir. 2014) (explaining that Rule 6(a)'s method of computation excludes the triggering date, "is known as the anniversary method," and "applies by default" unless the applicable statute dictates a different method); *Marcello*, 212 F.3d at 1010 ("[B]ecause the anniversary date is clear and predictable and therefore easier for litigants to remember, for lawyers to put in their tickler files, and for courts to administer, we adopt the anniversary

rule."); *Hurst*, 322 F.3d at 1260 (adopting the anniversary method because the AEDPA "statute of limitations is measured in years"); *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir. 1990), *as amended on reh'g* (Aug. 29, 1990) (action under § 1983 for deprivation of civil rights was time-barred because "when the applicable limitations period is measured in years, . . . the anniversary date of the date of accrual is the last day for instituting action" (internal quotation and alterations omitted)); *Monkelis v. Mobay Chem.*, 827 F.2d 937, 938 (3d Cir. 1987) (because limitations period expired on the six-year anniversary date, ERISA action was time-barred); *United States v. Inn Foods, Inc.*, 383 F.3d 1319, 1322-23 (Fed. Cir. 2004) (adopting the reasoning in *Marcello*).

Similarly, the majority of state courts, in applying their respective rules for computing limitations periods, have adopted the anniversary method for periods measured in years. *See, e.g.*, *Tesseo v. Brown*, 712 A.2d 1059, 1060-61 (Me. 1998); *State ex rel. Quinn v. Johnson*, 868 P.2d 555, 556-59 (Kan. Ct. App. 1994); *Shalabi v. City of Fontana*, 35 Cal. App. 5th 639, 643-44 (Cal. 2019), *aff'd*, 489 P.3d 714 (Cal. 2021); *Williams v. Crop Prod. Servs., Inc.*, 361 P.3d 1075, 1078-79 (Colo.

App. 2015); *Kowalski v. Hereford L'Oasis*, 79 P.3d 319, 321 (Or. Ct. App. 2003);

*State v. Smith*, 834 N.W.2d 799, 801-02 (Neb. 2013).[10]

We hold that the anniversary method, which does not count the day of the triggering event in the limitations period, is more compatible with Super. Ct. Civ. R. 6(a) and adopt this method over the calendar method. *See Marcello*, 212 F.3d at 1009 (noting that Fed. R. Civ. P. 6(a) is the basis for the anniversary method). Furthermore, the anniversary method is simple and predictable, aligns with how we ordinarily track the passage of time, and provides a clear deadline for initiating legal action. *See Patterson v. Stewart*, 251 F.3d 1243, 1246-47 (9th Cir. 2001) ("[T]he 'anniversary method' . . . has the advantage of being easier for petitioners, their attorneys and the courts to remember and apply."); *Williams*, 361 P.3d at 1078 ("This simple method of computation eliminates uncertainty caused by not knowing which days to count and which to leave out of the computation, and how to calculate

---

[10] Some state courts have determined that the anniversary method was proper in part because the applicable statute defined "year" as a "calendar year" and "preclude[d] a method of computation of years that would require counting of days." *See, e.g.*, *Williams*, 361 P.3d at 1077-78; *Tesseo*, 712 A.2d at 1060-61. These cases interpret a "calendar year" as a twelve-month period beginning and ending on the anniversary date. *See Williams*, 361 P.3d at 1077-78; *Tesseo*, 712 A.2d at 1060-61; E.L. Strobin, *What 12-Month Period Constitutes "Year" or "Calendar Year" As Used in Public Enactment, Contract, or Other Written Instrument*, 5 A.L.R.3d 584, § 5 (1966) (citing cases "constru[ing] the term 'year' or 'calendar year' to mean a period of 12 months commencing at a fixed or designated month which terminated with the day of the corresponding month in the next succeeding year thereafter").

limitations periods that include 'leap years' containing 366 days."). Thus, when a limitations period is governed by years, we need only track the anniversary of the triggering event. Applying the anniversary rule here, the limitations period expired on Saturday, May 7, 2022, and under Rule 6(a), Mr. Tovar had until Monday, May 9, 2022, to file his complaint. Because he filed on that day, his complaint was timely.

### D. Proximate Cause

As an additional basis to affirm dismissal of the complaint, Regan argues that the complaint fails to sufficiently plead that Regan's error proximately caused Mr. Tovar any harm. Regan contends that it is speculative to suggest that presenting evidence of Mr. Tovar's future medical expenses would have yielded Mr. Tovar a larger award than the nearly $3.8 million he received. We disagree.

A legal malpractice complaint may be dismissed for failure to state a claim if it "does not allege sufficient facts showing causation or resulting non-speculative harm from [an attorney's] breach of its professional duty." *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 713 (D.C. 2013). This court has "declined to find proximate cause where we would have to speculate about a legal result." *Id.* at 710 (affirming dismissal where plaintiff alleged that but for law firm's filing of a brief in the United States Supreme Court for other parties that opposed plaintiff's writ of certiorari, "the Supreme Court would have granted certiorari,

found in his favor on the merits, and remanded the case to the federal district court," leading to his reinstatement into the military).

But, although litigation outcomes inherently involve some degree of uncertainty, we think that Mr. Tovar's complaint does not require the same layers of "compound speculation," *id.*, as in *Pietrangelo*. Mr. Tovar's allegations specify how Regan's alleged shortcoming affected his trial outcome. He claims that at least one doctor believed that Mr. Tovar required lifelong care because of his TBI, that he suffers ongoing and worsening TBI symptoms, and that had Regan presented this evidence, he would have received compensation for a lifetime of care expenses. Because Mr. Tovar's complaint sufficiently pleads that he would have "fared better" had specific evidence of extensive future care needs been adduced at trial, *Chase v. Gilbert*, 499 A.2d 1211, 1212 (D.C. 1985), we conclude that Mr. Tovar has sufficiently pleaded—without expressing any view on the merits of the question—that Regan's error was the proximate cause of his injury.

## III. Conclusion

For all of the foregoing reasons, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

*So ordered.*